IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| REAL HOSPITALITY, LLC, d/b/a EDS BURGER JOINT,<br><br>        *Plaintiff*,<br><br>v.<br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,<br><br>        *Defendants*. | Case No. 2:20-cv-87-KS-MTP |

## DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

## I.  INTRODUCTION

The COVID-19 pandemic has affected the public and most businesses throughout the country in unprecedented ways.  But these challenging and unfortunate circumstances do not create insurance coverage for losses that fall outside the terms of a policyholder's insurance contract.[1]

This proposed class action case involves whether Plaintiff's insurance policy provides coverage for business income losses arising from the COVID-19 pandemic. Defendant Travelers Casualty Insurance Company of America ("Travelers") seeks dismissal of the Complaint under

---

[1] Other similar COVID-19-related suits seeking coverage for business income losses are pending in various other federal and state courts across the country. Two motions for transfer and coordination or consolidation under 28 U.S.C. § 1407 have been filed with the Judicial Panel on Multidistrict Litigation ("JPML") in *In re: COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2942. Travelers, along with numerous other defendants and some of the plaintiffs, has opposed the motions for transfer and coordination or consolidation. The JPML hearing on the motions is scheduled for July 30, 2020.

Fed. R. Civ. P. 12(b)(6), on the grounds that the policy contains a clear and unambiguous exclusion for any loss caused by a virus, and on several other grounds.

Plaintiff Real Hospitality, LLC d/b/a Eds Burger Joint ("Plaintiff" or "Real Hospitality") owns and operates a restaurant in Hattiesburg, Mississippi. Compl., ¶¶ 13, 32. Plaintiff maintains that it is entitled to insurance coverage under the policy's Civil Authority, Business Income and Extra Expense provisions for its restaurant's claimed financial losses, which Plaintiff alleges were caused by the COVID-19 virus, and by city and state orders (the "Orders") issued to combat the spread of COVID-19.  Compl., ¶¶ 30, 39. But Plaintiff ignores the material terms of its Travelers insurance policy (the "Policy")—foremost among them an explicit exclusion of *any* "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." **Ex. A**, p. 148 of 170. Indeed, Plaintiff erroneously contends that the "policy does not provide any exclusion due to losses, business or property, from a virus or global pandemic," and seeks a declaration that "the policy does not contain an exclusion for a viral pandemic." Compl., ¶¶ 30, 72.

The case-dispositive virus exclusion is not the only reason Plaintiff's Complaint fails as a matter of law.  Rather, Plaintiff has not and cannot plead facts necessary to establish that it is entitled to Civil Authority, Business Income or Extra Expense coverage.

As to coverage under the Civil Authority provision, the Policy requires: (1) "action of civil authority that prohibits access to the described premises"; (2) that the civil authority order was "due to direct physical loss of or damage to property" at other locations within 100 miles of Plaintiff's premises; and (3) that the damage to property giving rise to the civil authority order was caused by a Covered Cause of Loss. Plaintiff has not alleged facts to satisfy any of these three requirements for Civil Authority coverage. The Orders referenced in the Complaint explicitly do

not prohibit access to Plaintiff's restaurant, but only suspend "dine-in services," a fact that Plaintiff concedes in the Complaint. Compl., ¶¶ 35-36. In fact, the Orders expressly "allow[] and highly encourage[]" take-out and delivery service during the COVID-19 pandemic. Courts nationwide have repeatedly held that to "prohibit access" requires that government authorities completely prevent access to the premises. The Orders do not completely prevent access to Plaintiff's restaurant. Moreover, the Orders were not the result of any damage to property, let alone damage to property caused by a Covered Cause of Loss. Instead, the Orders were issued for purposes of "social distancing," to slow the spread of COVID-19. Compl., ¶¶ 21, 38.

As to the Business Income and Extra Expense coverages, the Policy requires a necessary suspension of business operations caused by "direct physical loss of or damage to property" at the insured premises, and the loss or damage must be "caused by or result from a Covered Cause of Loss." Plaintiff has not alleged facts to satisfy these prerequisites for the Business Income and Extra Expense coverages. Plaintiff's allegations that the "presence of the virus," which Plaintiff does not allege was in its own premises,[2] and "suspension of [Plaintiff's] operations" purportedly due to the Orders constitute "direct physical loss of or damage to property" at Plaintiff's premises, Compl. ¶ 30, are contrary to the plain meaning of the Policy's terms and applicable law.

And, again, even if Plaintiff could have pleaded these factual requirements for coverage, Plaintiff's insurance claim—which results from the virus—would still be *expressly excluded* by the virus exclusion.

All of Plaintiff's claims should be dismissed. Plaintiff's declaratory judgment claim fails because he is not entitled to the relief he seeks, and because the declaratory judgment claim is

---

[2] Although Travelers does not seek adjudication of this issue on this motion, even the presence of the virus would not constitute the requisite "direct physical loss of or damage to property" at the insured premises. *See* fn. 10.

duplicative of his breach of contract claim. Plaintiff's breach of contract claim fails because the Policy does not provide coverage for Plaintiff's loss. To the extent Plaintiff attempts to proceed on behalf of a proposed class, he cannot do so where his individual claims fail to state a claim. The entire Complaint therefore should be dismissed, with prejudice.

## II.   PROCEDURAL HISTORY AND ALLEGED FACTS

### A.   This Lawsuit

Plaintiff owns and operates a restaurant, Ed's Burger Joint, in Hattiesburg, Mississippi. (the "Restaurant"). Compl. ¶¶ 13, 32. Plaintiff's Policy with Travelers, for the policy period from December 21, 2019 to December 21, 2020, is attached as Exhibit A hereto.[3]

The Complaint alleges that Plaintiff suffered losses "[a]s a direct result of . . . governmental orders and the COVID-19 pandemic," which "forced [Plaintiff] to close its premises, suspend business operations, and furlough employees." *Id.*, ¶ 39. According to the Complaint, Hattiesburg Mayor Toby Barker issued executive orders on March 18, 2020 and March 21, 2020 which "restrict[ed] operating times for all restaurants within Hattiesburg" and "clos[ed] all dine-in services at Hattiesburg restaurants," respectively. Compl., ¶ 35. The Complaint further alleges that, on March 24, 2020, Mississippi Governor Tate Reeves issued Executive Order No. 1463, which "further restrict[ed] restaurant operations in the State of Mississippi by suspending all dine-in services." *Id.*, ¶ 36. Plaintiff does not allege, however, that these Orders restricted or prohibited take-out and delivery services (and they did not). *Id.*, ¶¶ 35-36. The Complaint alleges that the

---

[3] The Policy can be properly considered on this motion to dismiss because it is referenced in and relied upon in the Complaint. *See, e.g.*, *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 200 (5th Cir. 2016) ("[W]e may consider the terms of the Policy in assessing the motion to dismiss because [defendant] attached it to its motion to dismiss, it was referred to in the complaints, and it is central to the [plaintiff's] claims.").

Orders were issued as "necessary measures to protect the health and safety of all residents by stopping the spread of the virus through human to human and surface to human contact." *Id.* ¶ 38.

Plaintiff's Complaint pleads two causes of action. Count I seeks a declaratory judgment that the Policy "provides coverage for business income losses and extra expense losses incurred due to virus pandemic and the measures taken by civil authorities to prevent the spread of COVID-19." *Id.*, p. 17. Count I makes clear that the losses for which coverage is being sought were "*due to the presence of COVID-19 and/or measures put in place by civil authorities to stop the spread of COVID-19*, specifically through human to human and surface to human contact . . . ." *Id.* ¶ 71(a) (emphasis added). Count II of the Complaint asserts a claim for "Breach of Contract and Anticipatory Breach of Contract," in which Plaintiff again alleges that it and the putative class members "were forced to close their premises to the public and cease or substantially reduce their operations *due to the measures put in place by civil authorities to stop the spread of COVID-19* through human to human and surface to human transmission." *Id.*, ¶ 83 (emphasis added). Plaintiff alleges Travelers has breached its contractual duties "by failing and refusing to pay benefits owed under its insurance policies," and that "Travelers intends to deny or refuse to provide coverage for business income losses or extra expenses incurred *due to the measures put in place by civil authorities to stop the spread of COVID-19*." *Id.*, ¶¶ 84-85 (emphasis added).

Plaintiff's Complaint seeks to certify a nationwide class defined as Travelers policyholders "who have suffered losses due to measures put in place by civil authorities to stop the spread of COVID-19" and whose policies include Business Income and Extra Expense coverages and "do not exclude coverage for pandemics . . . ." *Id.*, ¶ 56.

### B.     The Orders

As noted above, the Complaint relies on three executive orders: two issued by Mayor Barker on March 18, 2020 (Executive Order No. 2020-1) and March 21, 2020 (Executive Order No. 2020-2); and one issued by Governor Reeves on March 24, 2020 (Executive Order No. 1463). Compl., ¶¶ 35-36. Plaintiff characterizes Mayor Barker's Executive Order No. 2020-1 as "restricting operating times for all restaurants within Hattiesburg" and Mayor Barker's Executive Order No. 2020-2 as "closing all dine-in services at Hattiesburg restaurants." *Id.*, ¶ 35. Plaintiff characterizes Governor Reeves' Executive Order No. 1463 as "further restricting restaurant operations in the State of Mississippi by suspending all dine-in services." *Id.*, ¶ 36.

Mayor Barker issued Executive Order No. 2020-1 on March 17, 2020, to take effect beginning March 18, 2020 and ending March 31, 2020. **Ex. B**, p. 1 of 7.[4] Executive Order No. 2020-1 did not order the closure of Plaintiff's restaurant. Rather, Executive Order No. 2020-1 required "[a]ll full-service restaurants with indoor seating [to] cease operations at 9 p.m. daily. Once the dining room closes, a restaurant may still offer delivery or pick-up and to go orders." *Id.* The order also required a reduction in indoor and outdoor seating capacity. *Id.* Mayor Barker amended Executive Order No. 2020-1 through issuance of Executive Order No. 2020-2 on March 21, 2020. Executive Order No. 2020-2 took effect beginning March 22, 2020 and ended April 30,

---

[4] The executive orders can be properly considered on this motion to dismiss because they are referenced in and relied upon in the Complaint, and because the Court can take judicial notice of them under Fed. R. Evid. 201(b), (d) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"; "[t]he court may take judicial notice at any stage of the proceeding"). *See, e.g.*, *Harris v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. ex rel. LSU Health Sci. Ctr. Shreveport*, 409 F. App'x 725, 727 n.2 (5th Cir. 2010) (taking judicial notice of website of university system's Board of Supervisors to determine membership of Board); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

2020. *Id.*, p. 2 of 7. Executive Order No. 2020-2 provides that "[a]ll restaurants located in the City of Hattiesburg, with or without drive-in or drive-through services, <u>may only provide take-out, pick-up, delivery, or drive-through services</u> as allowed by law. There shall be no in-house dining or available sitting areas for the public." *Id.* (emphasis added).

Governor Reeves issued Executive Order No. 1463 on March 24, 2020. *Id.*, pp. 3-7 of 7. Executive Order No. 1463 provides that, effective from March 24, 2020 to April 17, 2020, "restaurants, bars, or other dining establishments <u>shall suspend all dine-in services unless able to reduce capacity to allow no more than 10 people to be gathered in a single space at the same time where individuals are seated or otherwise in close proximity to each other</u>." *Id.*, p. 2 (emphasis added). The Order went on to provide: "<u>However, the use of drive-thru, carryout, or delivery options is *allowed and highly encouraged*</u>." *Id.* (emphasis added).

The Orders state that they were issued "in response to the COVID-19 outbreak," "in an effort to slow the spread of Covid-19," Exec. Order No. 2020-1, at p. 1, Exec. Order No. 2020-2, at p. 1, and due to "the worldwide outbreak of COVID-19 and the effects of its extreme risk of person-to-person transmission throughout the United States and Mississippi . . . ." Exec. Order No. 1463, at p. 1. Nothing in the Orders requires the complete closure of the Restaurant. Indeed, the Orders either expressly permit, or "allow[] and highly encourage[]" restaurants to provide take-out and delivery services.

### C.    Contract Language at Issue

#### 1.    The Relevant Coverage Provisions

Plaintiff purchased a Restaurant Pac Policy from Travelers, which insured its business personal property (such as furniture and equipment) from direct physical loss of or damage to property caused by covered causes of loss, such as a fire or windstorm. For example, in the event

of a fire that requires a suspension of business operations, the Policy would cover a loss of business income or increase in expenses that results from the suspension of operations caused by the fire damage and occurs during the "period of restoration"—while the repairs are being made.

As noted above, Plaintiff's Complaint seeks coverage under the Policy's Business Income, Extra Expense, and Civil Authority coverages. The Business Income and Extra Expense provisions state, in relevant part:

> **a. Business Income**
>    . . .
>    **(2)** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be <u>caused by direct physical loss of or damage to property at the described premises</u>. <u>The loss or damage must be caused by or result from a Covered Cause of Loss</u>. . . . .
>    . . .
> **b. Extra Expense**
>    **(1)** Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no <u>direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss</u>.

**Ex. A**, pp. 22-23 of 170 (underscores added). The Policy defines "Covered Causes of Loss" as "RISKS OF DIRECT PHYSICAL LOSS <u>unless the loss is . . . [e]xcluded</u>." *Id.*, pp. 23-24 of 170 (underscore added). As highlighted above, the express requirements for Business Income and Extra Expense coverages to apply include: (i) "direct physical loss of or damage to property" at Plaintiffs' premises; and (ii) such loss or damage "must be caused by or result from a Covered Cause of Loss" (i.e., a non-excluded cause).

In the provision entitled "Civil Authority," coverage for Business Income and Extra Expense resulting from a "Covered Cause of Loss" is extended to

> the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by <u>action of civil authority that prohibits access to the described premises</u>. The civil authority action must be due to direct physical loss of or damage to property at locations, other than

described premises, that are within 100 miles of the described premises, <u>caused by or resulting from a Covered Cause of Loss</u>.

*Id.*, pp. 32 of 170 (underscores added). As highlighted above, the express requirements for Civil Authority coverage to apply include: (i) a civil authority action must "prohibit" access to the insured's premises, (ii) the action must be "due to direct physical loss of or damage to property" at a location other than Plaintiff's premises but within 100 miles, and (iii) such damage must be "caused by or resulting from a Covered Cause of Loss" (i.e., a cause that is not excluded from coverage).

### 2.   The Virus Exclusion

The Policy contains an endorsement entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," which expressly applies to Business Income, Extra Expense and Civil Authority coverages. The exclusion provides, in pertinent part, as follows:

> This endorsement modifies insurance provided under the following:
> . . .
>        COMMERCIAL PROPERTY COVERAGE PART[5]
> . . .
> **A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover <u>business income, extra expense</u>, rental value <u>or action of civil authority</u>.
>
> **B.** We will not pay for loss or damage caused by or resulting from <u>any virus</u>, bacterium or other microorganism <u>that induces or is capable of inducing physical distress, illness or disease</u>.

**Ex. A**, p. 148 of 170 (emphasis added).

---

[5] The Policy includes the Businessowners Property Coverage Special Form, Form MP T1 02 02 05. *See* Ex. B, pp. 9, 21 of 170. The Policy provides that "[e]ndorsements referencing the Commercial Property Coverage Part . . . apply to the Businessowners Property Coverage Special Form in the same manner as they apply to the forms they reference." *Id.*, p. 12 of 170.

As demonstrated below, Plaintiff's factual allegations cannot satisfy the prerequisites for coverage under the Civil Authority, Business Income or Extra Expense coverages, and, in any event, the virus exclusion clearly and unambiguously precludes coverage.

## III.    LEGAL STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff "must plead more than labels and conclusions," and "[f]actual allegations must be enough to raise the right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Courts also may not presume the truth of an allegation that is contradicted by documents attached to or referenced in the Complaint. *Kamps v. Baylor Univ.*, 592 F. App'x 282, 284 n.1 (5th Cir. 2014) ("If an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.").

Under Mississippi law,[6] courts "follow[] the plain meaning and common sense approach when interpreting insurance clauses." *Wooten v. Mississippi Farm Bureau Ins. Co.*, 924 So. 2d

---

[6] Mississippi law applies here. This Court, sitting in diversity jurisdiction, applies the choice of law rules of the forum state, *i.e.*, Mississippi. *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 906 F.2d 158, 167 (5th Cir. 1990). In cases arising from insurance contracts, Mississippi follows RESTATEMENT (SECOND) CONFLICT OF LAWS § 193, under which "the rights created by [an insurance] contract 'are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy.'" *Hartford Underwriters Ins. Co. v. Found. Health Servs. Inc.*, 524 F.3d 588, 594 (5th Cir. 2008) (citing

519, 522 (Miss. 2006). Under this approach, "when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 585 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). Moreover, a court "cannot alter or change [a] contract where [its] terms are not ambiguous, despite resulting hardship on [the] insured." *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So. 2d 1371, 1373 (Miss. 1981); *see also Bay Point High & Dry, Inc. v. Gore Brennan*, No. CIVA 106CV178-LG-JMR, 2007 WL 2908637, at *2 (S.D. Miss. Oct. 3, 2007) (courts applying Mississippi law "will not rewrite or deem a contract ambiguous where the language is clear and indicative of its contents").

## IV.   ARGUMENT

The facts pleaded in the Complaint demonstrate as a matter of law that Real Hospitality cannot prove an entitlement to coverage under the Policy. Indeed, the Complaint seeks coverage for losses that Plaintiff expressly alleges were caused by orders issued to combat the spread of a virus—yet, as previously described, the Policy contains an explicit exclusion of *any* type of property coverage, including Business Income, Extra Expense, and Civil Authority coverage, for *any* "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  For this reason alone, Plaintiff's claims for declaratory relief regarding coverage and for breach of contract should be dismissed with prejudice. To the extent Plaintiff asserts its claims on behalf of a proposed class, the claims must also be dismissed because Plaintiff has failed to state a claim for relief as to itself.

---

RESTATEMENT § 193). Here, the Policy was issued to Real Hospitality at an address located in Mississippi and insured property located in Mississippi. Compl., ¶¶ 31-32; **Ex. A**, p. 1 of 170.

**A.    Real Hospitality Is Not Entitled to Civil Authority Coverage as a Matter of Law**

Civil Authority coverage insures certain business losses and expenses "caused by action of civil authority" that is "due to direct physical loss of or damage to property . . . *caused by or resulting from a Covered Cause of Loss*." **Ex. A**, p. 35 of 170 (emphasis added); *see also* Compl., ¶ 29 (quoting Civil Authority provision). Again, the Policy explicitly excludes losses "caused by or resulting from any virus" from its Covered Causes of Loss. Moreover, the "action of civil authority" must "*prohibit[] access* to the described premises" for there to be any potential of coverage. **Ex. A**, p. 35 of 170. As Plaintiff implicitly concedes, Compl. ¶¶ 35-36, the Orders do not prohibit access to the premises—rather, the Orders "allow[] and *highly encourage*[]" access to the premises to allow for take-out and delivery service. **Ex. B**, pp. 1-2, 4 of 7 (emphasis added). Furthermore, Plaintiff alleges, and the Orders reflect, that they were issued not due to any damage to property, but rather for public health purposes, to slow the spread of COVID-19. Because Plaintiff's allegations fail to satisfy any of the required elements of Civil Authority coverage, dismissal is warranted as to Plaintiff's requests regarding this coverage.

**1.    Civil Authority Coverage Does Not Apply to Losses Caused by or Resulting From a Virus**

Pursuant to the Policy's express terms, an "action of civil authority" can *only* give rise to coverage if, among other things, the action is taken due to physical loss or damage "*caused by or resulting from a Covered Cause of Loss*." **Ex. A**, p. 35 of 170 (emphasis added). As a matter of logic as well as explicit policy language, an *excluded* risk of loss is *not* a Covered Cause of Loss.

Plaintiff alleges that the Orders were issued as "necessary measures to protect the health and safety of all residents *by stopping the spread of the virus* through human to human and surface to human contact." Compl., ¶ 38 (emphasis added). The Orders themselves state that they are

intended to "slow the spread of Covid-19" and "to minimize risk of possible further transmission of COVID-19." **Ex. B**, pp. 1-3 of 7. The losses alleged, therefore, are caused by or result from the Coronavirus, a risk of loss that falls squarely within the Policy's broad exclusion of "loss or damage *caused by or resulting from any virus*, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." **Ex. A**, p. 148 of 170. And the exclusion expressly applies to the Civil Authority coverage. *Id.* ("The exclusion . . . applies to . . . forms or endorsements that cover business income, extra expense, rental value or *action of civil authority*." (emphasis added)).

Mississippi law instructs that courts "follow[] the plain meaning and common sense approach when interpreting insurance clauses." *Wooten*, 924 So. 2d at 522 (Miss. 2006). Under this approach, "when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Simmons*, 543 F. Supp. 2d at 585. Mississippi courts evaluating policy exclusions foreclosing coverage for losses "caused by" or "resulting from" specified noncovered risks have found the provisions unambiguous and applied their plain meaning. *See, e.g.*, *Robichaux v. Nationwide Mut. Fire Ins. Co.*, 81 So. 3d 1030, 1036 (Miss. 2011) ("[C]overage does not extend to 'loss caused by flooding[] . . . . Thus, there is no ambiguity in the policy that could be interpreted in favor of the [insured]."); *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 430 (5th Cir. 2007) (exclusion for loss "resulting directly or indirectly from" specified noncovered risks unambiguously excluded coverage).[7]

---

[7] While few courts have had occasion to construe a virus or microorganism exclusion, courts have enforced them in accordance with their clear and unambiguous language. *See, e.g.*, *Certain Underwriters at Lloyd's London v. Creagh*, Civ. A. No. 12-571, 2013 WL 3213345 (E.D. Pa. June 26, 2013) (holding that exclusion for "any loss . . . arising out of or relating to . . . [a] microorganism of any type" precluded coverage for damage to bathroom caused by bacteria from dead body), *aff'd*, 563 Fed. App'x 209 (3d Cir. 2014); *Doe v. State Farm Fire & Cas. Co.*, No. 2015-0136, 2015 WL 11083311, at *2 (N.H. Sept. 21, 2015) ("We conclude that a reasonable

There is no question that the plain language of the virus exclusion controls here. The Complaint specifically (and necessarily) describes the "Coronavirus," also referred to as SARS-CoV-2 or the COVID-19 virus, as a "virus" that has resulted in the "deadly COVID-19 outbreak" and "worldwide pandemic," and alleges that the virus poses serious risks to human health, has caused many deaths, and has "taxed the United States' health care delivery system to near collapse with an overflow of critically ill patients . . . ." Compl. p. 1, ¶¶ 1, 16-21. Thus, as alleged by Plaintiff, the Coronavirus is a virus "capable of inducing physical distress, illness or disease," which falls squarely within the scope of the virus exclusion. **Ex. A**, p. 148 of 170. The Coronavirus is not a Covered Cause of Loss and therefore cannot give rise to Civil Authority coverage.

Nonetheless, Plaintiff explicitly requests declarations that the Policy does not include a virus exclusion and that the Policy thus provides coverage for losses caused by the "virus pandemic." Compl. ¶¶ 72-73, p. 17 ("Wherefore" paragraph). Plaintiff also alleges that Travelers breached the Policy by denying Plaintiff's claim for losses resulting from COVID-19. Compl., ¶¶83-84. As discussed above and demonstrated by the Policy itself, the Policy does include a virus exclusion. **Ex. A**, p. 148 of 170. To grant Plaintiff's request—*i.e.*, to declare the Policy does not include a virus exclusion—would "distort" the Policy into "a different contract from that actually entered into by the parties." *Maryland Cas. Co. v. Franklin Cty.*, 2010 WL 11578543, at *5 (S.D. Miss. Sept. 2, 2010) (quoting *Travelers Indem. Co. v. State Farm Mut. Auto. Ins. Co.*, 246 So. 2d

---

person in the position of the insured, based upon more than a casual reading of the policy as a whole, would understand the policy to exclude all diseases and viruses that can be transmitted from one person to another."); *Lambi v. Am. Family Mut. Ins. Co.*, 498 F. App'x 655, 656 (8th Cir. 2013) ("the policy excluded bodily injury arising out of the actual or alleged transmission of a communicable disease, and infecting another with the HIV virus clearly falls within the plain and ordinary meaning of the transmission of a communicable disease"); *Clarke v. State Farm Fla. Ins.*, 123 So. 3d 583, 584 (Fla. Dist. Ct. App. 2012) (similar result, finding exclusion unambiguous).

498, 510 (Miss. 1971)). Such a result would effectively "rewrite [the Policy] under the guise of construction." *Id.*

Because Plaintiff's construction of the Policy requires that the virus exclusion be ignored, it is unreasonable, and dismissal is warranted.

### 2.   Civil Authority Coverage Does Not Apply Because the Orders Did Not "Prohibit Access" to Plaintiff's Premises

Plaintiff's allegations also fail to establish Civil Authority coverage for the independent reason that the Orders did not "prohibit access" to the described premises, Plaintiff's restaurant. Courts interpreting civil authority provisions uniformly require the phrase "prohibit access" to mean to "formally forbid" or "prevent" any access to the premises.  *See, e.g.*, *Southern Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004); *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (interpreting "prohibit," as used in civil authority provision, to mean "to forbid by authority or command"). Limitations restricting access are not sufficient. For example, in *St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*, 1999 WL 33537191 (N.D. Miss. Nov. 4, 1999), the court concluded that access to the insured casino had not been "den[ied],"[8] and thus civil authority coverage had not been triggered, where a state order closed one bridge leading to the insured premises but left open a second bridge providing access to the premises. *Id.* at *3. Similarly, in *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003), the Fifth Circuit held that, although a hotel had suffered a decrease in

---

[8] The Fifth Circuit has adopted the *Lady Magnolia* court's interpretation of "when a Civil Authority . . . denies access" and applied it to civil authority provisions cast in terms of "action of civil authority that prohibits access." *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (unpublished). The words "prohibit access" make even more clear that a civil authority must completely prevent access to the insured premises in order for civil authority coverage to apply.

income after airports were closed following the September 11th attacks, there was no civil authority coverage because "[t]he generally prevailing meaning of 'prohibit' is . . . 'to forbid by authority or command,'" and "[i]t is undisputed that the FAA did not forbid any person to access the [insured's] hotels." *Id.* at *2.

730 Bienville Partners, Ltd. and other civil authority coverage cases after the September 11, 2001 terrorist attacks reinforced this distinction between orders that "prohibit access" to an insured premises and those that impact business operations, but without prohibiting access. Courts across the country uniformly rejected attempts by hotels, airport parking garages, and even airport gift shops to claim coverage for losses incurred as a result of the FAA orders because they did not "prohibit access" to the various businesses. *See Southern Hospitality*, 393 F.3d at 1140 ("The FAA order prohibited access to airplane flights; it did not prohibit access to hotel operations."); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (While the order "may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage[.]"); *Backroads Corp. v. Great Northern Ins.*, 2005 WL 1866397, *6 (N.D. Cal. 2005) (similar); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004) ("The Court sees no reasonable means of construing [the] order to ground all aircraft as an order specifically forbidding access to plaintiff's premises" in airport terminal stores). Likewise, while post-September 11th orders closing lower Manhattan businesses in the days following the attacks "prohibited access" to businesses, subsequent "vehicular traffic restrictions" were insufficient to trigger coverage even though they "restrain[ed] . . . normal operating procedures" for businesses. *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 335-36

16

(S.D.N.Y. Mar. 12, 2004); *see also 54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 763 N.Y.S.2d 243, 244 (N.Y. App. Div. 2003).

Here, the Orders referenced in Plaintiff's Complaint make clear that access to the insured premises was not prohibited—in fact, access to the Restaurant was "allowed and highly encouraged" in order for Plaintiff to provide take-out and delivery service to its customers.[9] **Ex. B**, p. 4 (Executive Order No. 1463); *id.* at 1-2 (Executive Order Nos. 2020-1 and 2020-2, which permit take-out and delivery service). That access to the Restaurant has been limited insofar as Executive Order No. 2020-2 bars dine-in service does not bring Plaintiff's claimed losses within the Policy's Civil Authority coverage. The Policy requires that an applicable order "prohibit" access, not limit access. Courts uniformly hold that this language requires that an order "completely prohibit[] access"—not "merely hinder[] access"—to implicate coverage. *Ski Shawnee*, 2010 WL 2696782, at \*5; *see also Commstop, Inc. v. Travelers Indemn. Co. of Conn.*, No. cv-11-1257, 2012 WL 1883461 (W.D. La. 2012), at \*9 (coverage only applies where access is "totally and completely prevented—i.e., made impossible" by the civil authority action); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. CIV. A. 06-770-C, 2007 WL 2489711, at \*4 (M.D. La. Aug. 29, 2007) (no coverage when order "encouraged" residents to stay off streets before hurricane, because it did not "actually and completely prohibit access"); *By Dev., Inc. v. United Fire & Cas. Co.*, No. CIV 04-5116, 2006

---

[9] To the extent that Plaintiff alleges that it "has been *forced to close* its premises, suspend business operations, and furlough employees," Compl., ¶ 39 (emphasis added), that appears to be a reference to a business decision made by Plaintiff, because the Orders unambiguously do not require such closure. In any event, the Orders' express language controls over any erroneous interpretation of the Orders in Plaintiff's allegations. *See Kamps*, 592 F. App'x at 284 n.1; *Perry v. Fed. Nat. Mortg. Ass'n*, No. 3:14-CV-0077-B, 2014 WL 3972295, at \*6 (N.D. Tex. Aug. 13, 2014) (disregarding, on motion to dismiss, allegations that "run directly contrary to the documents incorporated into the petition by reference").

WL 694991, *5 (D.S.D. Mar. 14, 2006), aff'd, 206 F. App'x 609 (8th Cir. 2006).  Plaintiff has not

and cannot allege that the Orders "completely prohibited" access to its business premises given

that the Orders expressly permitted and encouraged take-out and delivery service.

> **3.**      **Civil Authority Coverage Does Not Apply Because the Complaint Does Not Allege That the Orders Were "Due to Direct Physical Loss of or Damage to Property" at Other Locations**

Plaintiff's allegations also fail to satisfy the Policy's requirement that "[t]he civil authority

action must be *due to direct physical loss of or damage to property* at locations, other than

described premises, that are within 100 miles of the described premises, caused by or resulting

from a Covered Cause of Loss." **Ex. A**, p. 35 of 170. Courts have consistently held that this policy

provision requires "requires proof of a *causal link* between prior damage and civil authority

action." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (emphasis

added); *see also South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, Civ. A. No. H-06-4041, 2008

WL 450012, at *8 (S.D. Tex. Feb. 15, 2008) (words "due to" in civil authority provision require a

"close causal link" between damage to property and civil authority order).

Here, Plaintiff alleges that the Orders were "necessary measures to protect the health and

safety of all residents by stopping the spread of the virus through human to human and surface to

human contact." Compl., ¶ 38; *see also id.*, ¶¶ 71(a), 83, 85 (describing Orders' purpose as

"stop[ping] the spread of COVID-19"); *see also* **Ex. B**, pp. 1-3 of 7 (Orders variously describing

their purposes as "slow[ing] the spread of Covid-19" and "minimiz[ing] risk of possible further

transmission of COVID-19"). Plaintiff has not alleged facts capable of establishing that the Orders

were issued "due to direct physical loss of or damage to" property, and they were not. *See generally*

**Ex. B**. This is another independent reason why Plaintiff is not entitled to coverage under the Civil

Authority provision. *See*, *e.g.*, *Dickie Brennan*, 636 F.3d at 686 (no civil authority coverage

because order was not "'due to' physical damage to property"); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (civil authority coverage did not apply where "the government's subsequent decision to halt operations at the Airport indefinitely was based on fears of future attacks" on September 11, 2001, not because of damage to adjacent property); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, No. 4:19-CV-00693-SAL, 2020 WL 886120, *8 (D.S.C. Feb. 24, 2020) (finding no coverage under civil authority provision where governor's executive order, "which started the mandatory evacuation, does not reference any 'damage or destruction of property'"); *Paradies Shops*, 2004 WL 5704715 at *7 (finding no coverage under civil authority provision where order issued after September 11th attacks "was issued as a result of the threat of additional terrorist acts," not due to existing damage to property); *South Texas Med. Clinics*, 2008 WL 450012 at *10 (finding no coverage under civil authority provision where "the mandatory evacuation order for Wharton County was issued due to the anticipated threat of damage to the county and not due to property damage that had occurred").

To summarize: as a matter of law, Plaintiff is not entitled to a declaration establishing Civil Authority coverage under the Policy because the Complaint does not and cannot allege: (1) physical loss or damage to non-insured property "caused by or resulting from a Covered Cause of Loss" in light of the virus exclusion; (2) that the Orders "prohibited access" to Plaintiff's premises; or (3) that the Orders were "due to direct physical loss of or damage to property[.]"

### B.   Plaintiff Cannot Establish Entitlement to Business Income or Extra Expense Coverage

Given the Complaint's focus on the Orders, the focal point of the Complaint is Civil Authority coverage. Yet Plaintiff also seeks coverage under the Business Income and Extra Expense coverages.  Compl. ¶¶ 72, 80-81, 85. This claim also fails as a matter of law.  As explained below, Plaintiff has not alleged any facts demonstrating, as expressly required by the Business

Income and Extra Expense provisions, that there was "direct physical loss of or damage to property at [Plaintiffs'] premises."  Nor has Plaintiff alleged, or can it allege, that any purported "direct physical loss of or damage to property" at its premises was caused by a Covered Cause of Loss. The virus exclusion discussed above expressly applies not only to Civil Authority coverage but also to the Business Income and Extra Expense coverages.

**1.**      **As a Matter of Law, Plaintiff Is Not Entitled to Business Income or Extra Expense Coverage Because Plaintiff Has Not Alleged Facts Capable of Establishing "Direct Physical Loss of or Damage to Property at [Plaintiff's] Premises"**

The Business Income provision provides coverage for "actual loss of Business Income . . . due to the necessary 'suspension' of [Plaintiff's] 'operations'" only if (1) the suspension is "caused by direct physical loss of or damage to property at the described premises," and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss." **Ex. A**, pp. 22-23 of 170. The Extra Expense Coverage similarly requires "direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." *Id.*, p. 23 of 170. Under either provision, the Policy provides coverage only if there has been "direct physical loss of or damage to property" that was "caused by or result[ed] from a Covered Cause of Loss."

Plaintiff's Complaint includes vague, conclusory allegations that "Plaintiff and all similarly situated Class Members have suffered a direct physical loss of and damage to their property *due to the presence of the virus* and due to the suspension of their operations *from the global COVID-19 pandemic* and the civil authorities' measures *to stop the human to human and surface to human transmission of COVID-19*." Compl., ¶ 30 (emphasis added); *see also id.*, ¶ 6 (alleging "the COVID-19 pandemic and the corresponding response by civil authorities to stop the spread of the outbreak . . . has caused physical property loss and damage to the insured property"); *id.*, ¶ 42 (alleging that "COVID-19 is physically impacting private commercial property in the

20

Hattiesburg area, the State of Mississippi and throughout the United States"); *id.*, ¶ 64(d) (alleging common question of law and fact as to "[w]hether the presence of COVID-19 and/or the measures put in place by civil authorities to stop the spread of COVID-19 caused physical loss or damage to covered commercial property"). Plaintiff also alleges that "[t]he virus physically impacts public and private property." *Id.*, ¶ 30.

To the extent Plaintiff vaguely claims the virus somehow caused physical damage to the insured property,[10] without alleging any supporting facts, such vague and conclusory allegations fail to "raise the right to relief above the speculative level," and therefore such be dismissed. *Twombly*, 550 U.S. at 555. Moreover, as explained above and again below, the virus exclusion would bar any such claim.

To the extent that Plaintiff also vaguely alleges that the "suspension of operations" at Plaintiff's restaurant "from the global COVID-19 pandemic and the civil authorities' measures to stop the human to human and surface to human transmission of COVID-19" constitutes direct physical loss of or damage to property, Compl. ¶ 30, those allegations likewise fail as a matter of law. As the Fifth Circuit has explained in applying Mississippi law, "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a <u>detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property</u>." *Hartford Ins. Co. of the Midwest v. Miss. Valley*

---

[10] Although Travelers does not seek adjudication of this issue on this motion, the presence of the virus on a surface would not constitute direct physical loss of or damage to property as a matter of law. *See Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC), tr. at 5, 15 (S.D.N.Y. May 14, 2020) (**Ex. C** hereto) (court explaining in case making allegations similar to Plaintiff's allegations that COVID-19 "damages lungs," "[i]t doesn't damage printing presses" or other property, and "this is just not what's covered under these insurance policies").

*Gas Co.*, 181 Fed. Appx. 465, 470 (5th Cir. 2006) (unpublished; emphasis added) (quoting 10A Couch on Ins. § 148:46 (3d ed. 2005)); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576, at *4 (S.D. Miss. Nov. 19, 2007) (applying same definition of "direct physical loss or damage"). The Fifth Circuit further explained that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper." *Miss. Valley Gas Co.*, 181 Fed. Appx. at 470 (quoting *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270–71 (5th Cir.1990) (applying Louisiana law)). In *Miss. Valley Gas*, the Fifth Circuit held that a scheme in which natural gas was recirculated through a meter, causing the insured to sustain a monetary loss, was not "direct physical loss of or damage to Covered Property" because "absent some physical manifestation of loss or damage to the gas itself," there was no coverage for "mere monetary losses . . . ." *Id.*

Similarly, in *J.O. Emmerich*, Judge Jordan of this Court held that where the insured, a newspaper, lost electricity at its offices and was unable to access its computers, this was not a "direct physical loss" because "[t]he data existed on the computer both before and after the power outage," and "Plaintiff's interpretation of the contract would render the words 'direct' and 'physical' meaningless in the context of the policy." *J.O. Emmerich*, 2007 WL 9775576, at *3. The court further explained that, where the data was not "in any way lost or damaged," but "was merely unavailable until power was restored," "[t]his does not constitute a 'direct physical loss of or damage to' covered property." *Id.* at *4. Here, Plaintiff has not even lost *access* to *any* of its property; it has only been required to limit its operations to takeout and delivery service on its premises, under the Orders for "social distancing" purposes. As a matter of law, this does not

constitute "direct physical loss of or damage to property at [Plaintiff's] premises."[11] Nothing has happened to the property at Plaintiff's premises; the only thing that needs to happen for Plaintiff to resume dine-in service is for government officials to relax the "social distancing" requirements. And even if Plaintiff could satisfy the "direct physical loss of or damage to property" requirement, the virus exclusion would preclude coverage, as explained below.

2.   **As a Matter of Law, Plaintiff Cannot Establish Entitlement to Business Income and Extra Expense Coverages Because Those Coverages Do Not Apply to Losses Caused by or Resulting from a Virus**

Even if Plaintiff had alleged direct physical loss of or damage to property at the insured premises, which, again, as a matter of law it has not, Plaintiff's claims for Business Income and Extra Expense coverages still would fail as a matter of law. Plaintiff cannot escape the fact that a virus is not a Covered Cause of Loss: the virus exclusion expressly applies not only to Civil Authority coverage but also to the Business Income and Extra Expense coverages. **Ex. A**, p. 148 of 170 ("The exclusion applies to . . . forms or endorsements that cover *business income, extra expense*, rental value or action of civil authority") (emphasis added). Plaintiff's vague allegations regarding purported loss of or damage to property giving rise to a suspension of its operations and the Orders attribute all of this to the Coronavirus, Compl., ¶¶ 6, 30, 64(d), and the virus exclusion precludes coverage for Business Income and Extra Expense claimed on this basis. Thus, as a matter

---

[11] Moreover, the Policy must be read as a whole, *Hayne v. Doctors Co.*, 145 So. 3d 1175, 1180 (Miss. 2014), and Plaintiff's contention that a limitation on its operations as a result of the Orders constitutes "direct physical loss of or damage to property at [Plaintiff's] premises" is further dispelled by the fact that the Policy excludes "loss or damage caused by or resulting from . . . loss of use," "loss or damage caused directly or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the . . . use . . . of any property," and "loss or damage caused by or resulting from . . . [a]cts or decisions . . . of any . . . governmental body." **Ex. A**, at pp. 42, 44, 46 of 170.

of law, Plaintiff's Complaint premised on the Coronavirus cannot trigger Business Income or Extra Expense coverage.

### C.   Dismissal of the Complaint Is Proper Because Plaintiff Is Not Entitled to Any of His Requested Declarations or Damages

Because Plaintiff cannot demonstrate as a matter of law that it is entitled to coverage under the Policy's Civil Authority, Business Income, or Extra Expense provisions, Plaintiff is not entitled to the declaration it seeks, nor can Plaintiff establish that Travelers breached the Policy.  Plaintiff seeks a declaration that the Policy "provides coverage for business income losses and extra expense losses incurred due to virus pandemic and the measures taken by civil authorities to prevent the spread of COVID-19." Compl., p. 17 ("Wherefore" paragraph). As discussed above, Plaintiff has failed to state a claim that Civil Authority, Business Income, or Extra Expense coverage applies, and the virus exclusion precludes any coverage for Plaintiff's claim. Thus, no cognizable legal theory or set of facts has been alleged to sustain the declaration or to provide a valid basis for Plaintiff's declaratory judgment or breach of contract claims.

### D.   The Putative Class Claims Should Be Dismissed Due to Plaintiff's Failure to State a Claim for Relief as to Itself

To the extent Plaintiff attempts to plead claims on behalf of a proposed class, Compl., ¶¶ 56-68, those allegations cannot survive where Plaintiff's individual claims fail to state a claim. *See*, *e.g.*, *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) ("Because no class has been certified and because, for the reasons discussed below, [named plaintiff's] direct claims must be dismissed, he cannot serve as the representative of any properly certified class."); *Everitt v. City of Marshall*, 703 F.2d 207, 210 (5th Cir. 1983) (where named plaintiff's individual claims are dismissed, that is fatal to any attempt to certify a class).

## V.      CONCLUSION

For all of the reasons stated above, Plaintiff has failed to state any claim upon which relief must be granted.  Thus, Travelers respectfully requests that the Court dismiss the Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

By:    */s/ Edward J. Currie, Jr.*
      Edward J. Currie, Jr.
      Currie, Johnson & Myers, P.A.
      1044 River Oaks Dr.
      Jackson, MS 39232
      Tel: 601-969-1010
      Fax 601-969-5120
      E-mail: ecurrie@curriejohnson.com

      Brenen G. Ely
      ELY & ISENBERG, LLC
      2100-B Southbridge Parkway
      Suite 380
      Birmingham, AL 35209
      Tel. 205-313-1200
      Fax 205-313-1201
      E-mail: bely@elylawllc.com

      Stephen E. Goldman (admitted *pro hac vice*)
      Wystan M. Ackerman (admitted *pro hac vice*)
      Robinson & Cole LLP
      280 Trumbull Street
      Hartford, CT  06103
      Tel: 860-275-8200
      Fax: 860-275-8299
      E-mail: sgoldman@rc.com
      E-mail: wackerman@rc.com

      Attorneys for Defendants
      Travelers Casualty Insurance Company of America

## CERTIFICATE OF SERVICE

I, Edward J. Currie, Jr., certify that on June 22, 2020, I caused a true and correct copy of

the foregoing to be served via ECF upon the following:

John W. Barrett
Don Barrett, PA
P. O. Box 927
404 Court Square North
Lexington, MS 39095
Tel.: 662-834-2488
Fax: 662-834-2628
Email: dbarrett@barrettlawgroup.com

*Attorney for Plaintiff, Real Hospitality, LLC*

 */s/ Edward J. Currie, Jr.*
Edward J. Currie, Jr.

26