**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

REAL HOSPITALITY, LLC
d/b/a EDS BURGER JOINT                                                    PLAINTIFF

    v.                                                    CASE NO.: 2:20-cv-00087-KS-MTP

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA                                                    DEFENDANT

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Real Hospitality, LLC d/b/a Ed's Burger Joint ("Plaintiff"), submits the following

Response to Defendant Travelers Casualty Insurance Company of America's ("Defendant")

Motion to Dismiss the Complaint.

### I.        INTRODUCTION

Plaintiff owns and operates a small restaurant business in Hattiesburg, Mississippi. Compl

¶¶ 13, 32. Plaintiff had its dine-in business operations restricted and then suspended by orders of

the City of Hattiesburg and the State of Mississippi addressing the COVID-19 pandemic that

barred customers from Plaintiff's premises.  Compl. ¶¶ 35-36. Plaintiff's property is insured by

Defendant's all-risk commercial property insurance, which includes coverage for business

interruption.  Plaintiff filed a business-interruption claim with Defendant for lost business income

under its commercial-insurance policy.  Compl. ¶ 40.  Defendant denied Plaintiff's claim on the

ground that there had been no direct physical loss of or damage to property at Plaintiffs' premises,

a requirement for coverage.  *Id.*  Defendant also asserted inapplicable or unenforceable policy

exclusions. *See* Denial Letter attached hereto as Exhibit "1."

Hattiesburg's and the State's orders did, however, cause Plaintiff direct physical loss of property.  The orders shut Plaintiff's business down because it could not receive customers.[1] Plaintiff suffered a direct physical loss of its business premises because its business premises were rendered physically unusable for its intended purpose. The loss was direct because the orders were expressly directed to categories of businesses to which Plaintiff's business belongs, and because the orders were the direct cause of Plaintiff's loss of the usability of its business premises.

Although the Mississippi appellate courts have never addressed the coverage provision at issue, "direct physical loss of or damage to property," Plaintiff's position is supported by a significant number of cases from other jurisdictions, by well-established tenets of insurance law, and by reason and common sense.

Plaintiff has alleged a suspension of business activities which was caused by the entry of civil orders prohibiting its dine-in services. Such is a loss of property under the business interruption coverage of the policy if all of the facts as alleged by Plaintiff are assumed to be true. Moreover, Defendant's Virus and Bacteria Exclusion does not clearly and unambiguously preclude coverage as the loss of property is alleged to have resulted from the entry of civil orders suspending operations, not from the contamination of Plaintiff's premises by a virus.

## II.      FACTS

While Defendant's recitation of facts is generally correct, it is incomplete.  In its motion, Travelers claims that Plaintiff "vaguely" alleges a suspension of its business operations by civil order.  Plaintiff's complaint specifically alleges particularized facts stating when and how the civil orders suspended its business operations and forced it to close its premises and furlough its

---

[1] At the time this action was commenced, Plaintiff remained shut down, as a consequence of the governmental orders.

employees. Compl. ¶39.  Defendant's policy defines "Operations" as "business activities occurring at the described premises and the tenantability of the described premises." (Doc. 10-1, p. 58 of 171). Further, Defendant's policy defines "Suspension" to mean "a. The partial or complete cessation of [] business activities; or b. that a part or all of the described premises is rendered untentable." (Doc. 10-1, p.60 of 171). Travelers does not contend that Plaintiff has not alleged a suspension of business activities, but rather that such allegations are vague. As Plaintiff's complaint meets the standard of Rule 8 such is sufficient for purposes of Rule 12.

## III.      THE APPLICABLE LAW

Defendant's Motion to Dismiss is brought under Fed. R. Civ. P. 12(b)(6). In passing, Defendant raises a challenge to the sufficiency of Plaintiff's allegations under the *Twombly/Iqbal*[2] pleading standard. (Def. Travelers Casualty Ins. Co. of Am. Mem. of Law in Supp. of Its Mot. to Dismiss the Compl., Doc. No. 10 at 21, hereinafter referred to as "Br."). But Plaintiff's Complaint sets out in detail its allegation that the presence of the virus and the orders suspending its operations which have caused it to suffer business interruption. Plaintiff's factual allegations must therefore be taken as true. *Iqbal*, 556 U.S. at 678.  Defendant's challenges to Plaintiff's Complaint rest on arguments that the allegations fail to state a claim for coverage. The only question presented is whether the pertinent policy provisions provide coverage for Plaintiff's lost business income, under the facts of this case.  Mississippi law applies to this contract dispute, as Defendant concedes for the purposes of its Motion to Dismiss.  (Br. at 10 n. 6).

The interpretation of an insurance contract is a question of law. *Hankins v. MD. Cas. Co./Zurich Am. Ins. Co.*, 101 So. 3d 645, 652 (Miss. 2012). Generally, under Mississippi law,

---

[2] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. *Paul Revere Life Ins. Co. v. Prince*, 375 So. 2d 417, 418 (Miss. 1979). Under Mississippi law, ambiguous and unclear policy language must be resolved in favor of the non-drafting party—the insured. *Harrison v. Allstate Ins. Co.*, 662 So. 2d 1092, 1094 (Miss. 1995). The burden is on the insurer to phrase its policies in clear and understandable language. *Burton v. Choctaw County*, 730 So. 2d 1, 9 (Miss. 1997) ("[A] policy should be drafted to accommodate the average person who will give its terms a general reading."). Insurance contracts must be given a reasonable and commonsense interpretation, and where a policy is subject to two interpretations, each equally reasonable, the one which gives greater indemnity to the insure should be adopted. *State Farm v. Scitz*, 394 So. 2d 1371, 1372-73 (Miss. 1981). Further, provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer. *Nationwide Mut. Ins. Co. v. Garriga*, 636 So. 2d 658, 662 (Miss. 1994).

## IV.       THE RELEVANT COVERAGE PROVISIONS

Plaintiff's Business and Personal Property Coverage Form provides as follows:

### A.       Coverage

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.  ().

Plaintiff's Coverage Form addressing Business Income provides:

### A.       Coverage

#### 1.       Business Income

> . . . .

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of

> restoration".  The "suspension" must be caused by direct physical loss of or
> damage to property at premises which are described in the Declarations and
> for which Business Income Limit Of Insurance is shown in the Declarations.
> The loss or damage must be caused by or result from a Covered Cause of
> Loss. . ..

(Doc. 10-1, p. 23 of 171).

Plaintiff's policy provides that "Covered Causes of Loss" means "Risks of Direct Physical Loss," unless the loss is excluded or limited in the policy. (Doc.10-1, p. 24-25 of 171).  "Direct physical loss of or damage to property" is not defined in the policy.

The trigger for business-income coverage is "direct physical loss of or damage to property at premises which are described in the Declarations."  Plaintiff alleges it suffered a direct physical loss of its business premises because its business premises were rendered physically unusable for its intended purposes. Compl. ¶39. Defendant says that the suspension of operations and loss of usability of Plaintiff's property do not constitute direct physical loss of property and argues that "[n]othing has happened to the 'property at [Plaintiffs'] premises."  (Br. at 23).

But as will be seen, direct physical loss of property includes loss of usability.  To the extent Defendant attempts to differentiate between "property at premises which are described in the Declarations," and the premises themselves, the premises themselves are such property.  Common sense tells us that "property at premises" includes the premises themselves, which are property, as well as business personal property located in the structure.[3]  Plaintiff submits this is how a reasonable insured would read this language.  Certainly, if a runaway vehicle knocked a wall out of an insured's building, which shut down the business for a period of time, but left the personal property inside intact, Defendant would not stand on such a flimsy excuse as a purported difference

---

[3] *Black's Law Dictionary* (11th ed.2019) defines "premises" as, "A house or building, along with its grounds . . . ."

between property at the premises and the premises themselves, in order to deny business-income coverage.  This provision must be construed liberally in Plaintiff's favor, as the law requires.

## V.    ARGUMENT

**A.    The Question of What the Business-Income-Coverage Provision Means Should be Certified to the Mississippi Supreme Court**

To recover under a business interruption insurance policy an insured must show that (1) it suffered a direct physical loss of or damage to covered property at the  premises, (2) the property loss or damage was caused by or resulted from a Covered Cause of Loss, (3) the property loss or damage caused the insured to "suspen[d] its 'operations,'" (4) the insured lost Business Income during the period of restoration, and (5) the suspension of operations actually caused the insured's loss of Business Income.  *Dictiomatic, Inc. v. U.S. Fid. & Guar. Co*., 958 F. Supp. 594, 602 (S.D. Fla. 1997) (internal citations omitted).  Defendant's arguments in opposing coverage is that Plaintiff fails to satisfy the first requirement and that coverage is otherwise excluded.

 The Mississippi appellate courts have never addressed the coverage provision at issue, "direct physical loss of or damage to property."  There is no good indicator of how the Mississippi Supreme Court would rule.  Any *Erie* guess[4] this Court makes as to what the Mississippi Supreme Court would say about this issue would be speculative.

Plaintiff therefore submits that this Court should certify the question of what this coverage provision means to the Mississippi Supreme Court pursuant to.  Federal courts may certify an unsettled question of law to a state's highest court then that court has a procedure permitting such questions to be posed. *Swindol v. Aurora Flight Scis. Corp*., 805 F.3d 516, 520 (5th Cir. 2015) (citing 17A Charles Alan Wright, et al., Federal Practice& Procedure § 4248 (3d ed. 2015);

---

[4] *Erie R. Co. v. Thompkins*, 304 U.S. 64 (1938).

Mississippi has such a procedural rule in Mississippi Rule of Appellate Procedure 20. The Mississippi Supreme Court would likely accept the certified question, because the COVID-19 pandemic has generated numerous business-interruption-insurance lawsuits across the country, and several in this state, with the interpretation of this coverage provision the dispositive issue. To Plaintiff's counsel's knowledge, this is the first Mississippi case in which a Rule 12(b)(6) motion to dismiss has been filed. Certifying this question to the Mississippi Supreme Court would result in a definitive answer if the Court accepts the question, obviate an appeal to the Fifth Circuit by the loser in this case, and ultimately prevent the expenditure of a great deal of time and resources by the court system and the parties.

Notwithstanding Plaintiff's certification request, it will, of course, address the merits of the issues presented by the Motion to Dismiss.

**B.**     **The Business-Income-Coverage Provision Applies to Plaintiff's Loss of the Usability of their Business Premises**

The coverage language at issue is "direct physical loss of or damage to property." Defendant's policy does not define the phrases "direct physical loss of" and "damage to." The Mississippi Supreme Court has recognized the meaning of the word "or." "The use of the disjunctive 'or' denotes a choice between alternatives." *In Re Inquiry Concerning a Judge*, 419 So. 2d 145, 146 (Miss. 1982) (citing Webster's Third New International Dictionary (1967)). The placement of the word "or" between the phrases means "that each is 'separate and distinct' and 'must be considered separately as a trigger of coverage.'" *Gullino v. Econ. Fire & Cas. Co.*, 971 N.E. 2d 522, 528 (Ill. App. Ct. 2012); *See also Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F. 3d 743, 747 (7th Cir. 2015); *Fountain Powerboat Indus., Inc. v. Reliance Ins. Co.*, 119 F. Supp. 2d 552, 557 (E.D. N.C. 2000) (interpreting a business interruption policy in which coverage predicated on "loss, damage, or destruction" and holding that "loss" is not predicated on physical

damage but is one category of recovery along with damage and destruction "as indicated by the use of the alternative coordinating conjunction 'or'").

So, the coverage provision recites "loss of" and "damage to" as alternatives. "Loss of property" reasonably includes loss of usability, and significant case law supports that proposition. "Loss of property" is, also, obviously different from "loss to property," but some policy forms use the coverage provision "loss or damage to property," omitting the preposition "of," including many of the cases Defendant relies on. *Total Intermodal Serv., Inc. v. Travelers Prop. Cas. Co. of Am.*, No.: CV 17-04908 AB (KSx), 2018 U.S. Dist. LEXIS 216917 (C.D. Cal. July 11, 2018), explored the meaning of these two provisions and how they are different.

*Total Intermodal* involved an insurance claim by a freight forwarder for cargo that was lost because it was misdelivered. The coverage provision was for "direct physical loss of or damage to Covered Property." *Id.*, at *4. The court first observed that "[T]o interpret 'physical loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause, thereby violating a black-letter canon of contract interpretation—that every word be given a meaning." *Id.*, at *9. The court's analysis proceeded as follows:

> Travelers points to *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.,* 187 Cal.App.4th 766 (2010) and *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.,* 17 F.Supp.3d 323 (S.D.N.Y. 2014) as holding that "direct physical loss" requires some damage or alteration to the property. In *MRI*, the operative language was "direct physical loss **_to_** business personal property," *MRI, supra,* at 711 (emphasis added), and in *Newman*, the operative language was "direct physical loss or damage." *Newman*, *supra*, at 331. But again, those phrases omit the preposition "of" present in the Coverage term here. Thus, contrary to Travelers's argument, *MRI* and *Newman* did not construe the coverage term "physical loss of" that is in issue here. In fact, *MRI* and *Newman* cut against Travelers: because the clauses on those cases differ from the Coverage clause here, it stands to reason that they also differ in meaning, such that "direct physical loss *of*" should be construed differently from "direct physical loss *to*" or "direct physical loss." The Court therefore rejects Travelers's proposed construction. Instead, the phrase "loss of" includes the permanent dispossession of something.

*Id.*, at *10-11.

Another informative case is *State Farm Mut. Auto. Ins. Co. v. Rodriguez,* 987 N.E.2d 896 (Ill. App. 2013), which involved a claim on the comprehensive coverage of an automobile policy when the insureds' automobiles were seized by the police as stolen vehicles, which was unknown to the insureds when they purchased them.  The comprehensive coverage was "for loss, except loss caused by collision, to a covered vehicle."  *Id.* at 899 (emphasis omitted).  "Loss" was defined as "direct, sudden, and accidental damage to; or total or partial theft of a covered vehicle."  *Id.* (emphasis omitted).  The court concluded that had the policy insured against "loss of" a vehicle, and there would have been coverage for the seizures, but "loss to" a vehicle only covered physical damage to a vehicle.  *Id.* at 900-902.  The court also discussed another Illinois case and a New Jersey case involving the same fact situation that reached the same interpretation of the policy language.  *Id.* at 902.

So, "loss to property" coverage is not the same thing as coverage for "loss of property," because the former implicates some physical alteration to the property. *Philadelphia Parking Auth. v. Fed. Ins. Co.,* 385 F.Supp.2d 280 (S.D.N.Y.2005), cited by Defendant, also relied on the "loss to property" coverage that is inapplicable to this case. Likewise, Defendant's reliance on *Hartford Ins. Co. v. Miss. Valley Gas Co.* (which is not precedent) is misplaced because there the insured was ultimately returned all of the gas that had been stolen, and the Court therefore reasoned there was no "direct physical loss of or damage to" the property. 181 F. App'x 465, 466 n.* (5th Cir. 2006). Likewise, in *J. O. Emmerich & Assocs. v. State Auto Ins. Cos*., No. 3:06cv00722-DPJ-JCS, 2007 U.S. Dist. LEXIS 108969 (S.D. Miss. Nov. 19, 2007), the plaintiff newspaper's advertisements were returned unharmed once power was restored. Here, however, Plaintiff will never be able to recoup the damage done to its business operations by the Coronavirus.

There are, however, a significant number of decisions holding that with a "direct physical loss" coverage clause—especially a clause with "loss of" language—an actual physical alteration of the property is not required and loss of the property's usability is sufficient. *E.g., Western Fire Ins. Co. v. First Presbyterian Church,* 437 P.2d 52 (Colo. 1968) (church was unusable due to gasoline that accumulated under and around the structure; this constituted a direct physical loss); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.,* 563 N.W.2d 296 (Minn. App. 1997) (asbestos contamination could render a building unusable and constitute direct physical loss); *Farmers Ins. Co. of Oregon v. Trutanich,* 858 P.2d 1332 (Or. App. 1993) (the odor from a methamphetamine lab permeated a house and the cost of removing it was a direct physical loss); *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1 (W.Va. 1998) (house was uninhabitable because of the threat of rock falls; this was a covered direct physical loss because it rendered the insured property unusable); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418, 2014 U.S. Dist. LEXIS 165232 (D.N.J. Nov. 25, 2014) (applying New Jersey law; released ammonia in a packaging facility physically rendered the facility unusable for a period of time and therefore constituted "direct physical loss of or damage to" the facility); *TRAVCO Ins. Co. v. Ward*, 715 F.Supp.2d 699 (E.D. Va. 2010) (applying Virginia law; toxic gases from Chinese drywall rendered a structure uninhabitable and constituted a "direct physical loss" because they rendered the property unusable); *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 832 (E.D. La. 2010) (applying Louisiana law; toxic gases from Chinese drywall rendered a structure uninhabitable and constituted a "direct physical loss" because they rendered the property unusable); *Hughes v. Potomac Ins. Co.*, 18 Cal.Rptr. 650 (Cal. App. 1962) (the land around the insured's home fell away in a landslide, leaving the home overhanging a cliff; although the home remained intact, there had been a physical loss because it had been rendered useless to its owners);

*Mellin v. No. Sec. Ins. Co., Inc.*, 115 A.3d 799 (N.H. 2015) (a condominium unit was rendered unusable by the odor of cat urine emanating from the downstairs unit; evidence that the odor rendered the property temporarily or permanently unusable could support a finding that there was a physical loss); *Matzner v. Seaco Ins. Co.,* No. 96-0498-B, 1998 Mass. Super. LEXIS 407 (Mass. Super. Aug. 12, 1998) (carbon monoxide contamination sufficient to render a building uninhabitable was "direct physical loss of or damage to property"); *Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-cv-01932-CL, 2016 U.S. Dist. LEXIS 74450 (D.Or. June 7, 2016), *vacated for other reasons,* 2017 U.S. Dist. LEXIS 33208 (D.Or. Mar. 6, 2017) (the infiltration of wildfire smoke into an indoor/outdoor theater that rendered it temporarily uninhabitable and unusable for its intended purpose fell within the term "direct physical loss of or damage to property" for the purpose of business-interruption insurance); *Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed.Appx. 823 (3d.Cir.2005) (applying Pennsylvania law; where homeowners' well water was contaminated with bacteria, there was a genuine issue of material fact as to whether the functionality of the property was nearly eliminated or destroyed, or whether the property was made useless or uninhabitable, which would constitute a "direct physical loss" under the homeowners' policy).

Moreover, the concept that "physical loss of property" includes loss of the ability to physically use the property is one that would resonate with a reasonable business owner reading this provision in a business-income insurance form. Plaintiff submits that such loss of usability is precisely what a reasonable person in the insured's position would have understood the coverage provision as including. In fact, it would be counterintuitive to construe "physical loss of property" as excluding when the property is rendered physically unusable, even though it has not been physically altered. The dual nature of the coverage provision reinforces this conclusion.

Grammatically, "physical loss of or damage to property" presents two separate alternatives. The latter requires an actual physical alteration to property; the former is satisfied by loss of usability in some manner. Black's law dictionary defines "loss" as "[a]n undesirable outcome of a risk; the disappearance or diminution of value, usually in a an unexpected or relatively unpredictable way[;] … [and][t]he failure to maintain the possession of a thing." Loss, Black's Law Dictionary (11th Ed. 2019).

Defendant relies principally on two cases for its argument that Plaintiff's business interruption claim is not covered. Neither case is directly on point or have persuasive application. In *Hartford Ins. Co. v. Mississippi Valley Gas Co.*, Mississippi Valley Gas made a claim for loss of natural gas due to theft. Hartford denied the claim, arguing that the insured claimed on loss of money, not gas. The central dispute was over how to characterize the "loss." Hartford argued that there was "no actual deprivation of the covered property," and that the insured simply overpaid for the natural gas it was buying. *Hartford Ins. Co.*181 Fed. Appx at 470. The Fifth Circuit affirmed the district court's summary judgment, holding that there was no physical loss of or damage to the gas, as Mississippi Valley Gas had received it. *Hartford* did not involve as here, the loss of usability of insured property.

*J. O. Emmerich & Assocs. V. State Auto. Ins. Cos.*, No. 3:06 CV0072-DPJ-JCS, 2007 U.S. Dist. LEXIS 108969 (S.D. Miss. Nov. 19, 2007) likewise has no persuasive application. In *Emmerich* a Pike County newspaper was impacted by Hurricane Katrina, losing power for one week. The insured did not seek business interruption coverage and instead claimed that the loss of "stock." 2007 U.S. Dist. LEXIS 108969, at *6. The district court, on summary judgment, held that there was no coverage because there was no "direct physical loss" to the insured's computers, and that therefore there was no coverage. Drawing on cases outside the circuit, the district court

held that the mere loss of access to the computers, without any allegation of damage to or loss of data, did not trigger coverage. *Id.*, at *7-8.

*Emmerich*'s focus on loss of computer operations makes it particularly distinguishable. Plaintiff's policy recognizes that interruption of computer operations is a different type of business loss, extending coverage for suspension of operations caused by an interruption of computer operations.  (Doc. 10-1, p. 39 of 171).  Moreover, the *Emmerich* Court, respectfully, did not analyze the significant number of decisions from across the country holding that with a with a direct physical loss" coverage clause, particularly where the clause includes "loss of" language, that an actual physical alteration of the property is not required and the loss of the property's usability is sufficient.

Insurance contracts must be given reasonable and commonsense interpretation. Where, as here, the "loss of or damage to" provision can reasonably be interpreted to cover the "loss of" of usability of the insured premises and should be so construed to give the greater indemnity to the insured.

Defendant argues that Plaintiff has not lost access to any of its property. (Br. at 23). Plaintiff has in fact alleged loss of use of its property. Compl. ¶ 39.  Moreover, Defendant's policy provides coverage for "suspension" of "operations." (Doc. 10-1, p. 23 of 171).  "Suspension means "partial or complete cessation of [ ] business operations." (Doc. 10-1, p. 60 of 171). Defendant's policy defines "operations" to mean "business activities at the described premises . . ."  As Plaintiff has alleged suspension of its business activities its business interruption coverage applies.

Defendant argues that nothing has happened at the insured premises to constitute a loss. The "loss" of Plaintiff's in-restaurant dining areas was certainly "physical" as the dining room is composed of square footage and material, physical, tangible objects such as tables, chairs,

dispensers, which are perceptible to the senses.  See *One Place Condo., LLC. v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2015 U.S. Dist. LEXIS 56565, at *25 (N.D. Ill. 2015) (where all risk insurance policies insure against both "loss" and "damage" to a structure, "physical damage may take the form of loss of use of otherwise undamaged property.").

**C.**     **The Civil Authority Coverage Provision**

Plaintiff agrees that Civil Authority coverage is separate and distinct from Business-income, which addresses physical loss of or damage to property at the insured's premises.  Plaintiff seeks coverage under Business Income only and will upon leave amend its complaint accordingly.

**D.**     **The Definition of "Period of Restoration" Embraces Loss of the Usability of Plaintiff's Business Premises**

Plaintiff's policy provides coverage for lost business income during the "period of restoration," and Defendant contends the language of that defined term shows that "direct physical loss" means an actual physical alteration of the property.  The "period of restoration" can end either of two ways, including on "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality . . . ."  (Doc. 10-1 at p. 58 of 171).  Defendant says the terms "repaired, rebuilt or replaced" contemplate actual physical damage, not loss of usability, and it cites three cases that agree.

But one definition of "repair" is "to restore to a sound or healthy state."  *See* https://www.merriam-webster.com/dictionary/repair?utm_campaign=sd&utm_medium=serp&utm_source=jsonld.  The usability of Plaintiff's premises was most certainly not in a sound state, because Plaintiff could not use its premises for its intended purposes at all.  It would be restored to a sound state when the governmental order imposing that prohibition was lifted. Plaintiff's situation therefore fits

comfortably within the definition of the "period of restoration," especially considering the rule that insurance policies must be construed liberally in favor of the insured.

E. **The Policy Exclusion of Loss Due to Virus or Bacteria Does Not Clearly and Unambiguously Exclude Coverage**

Defendant relies on one policy exclusion, which Plaintiff will now address.[5] As in the case of the issue of coverage for "loss of" property, Defendant cites no governing case law from Mississippi nor any persuasive authority applying the Virus or Bacteria Exclusion to similar facts. Plaintiff is unaware of any cases from any jurisdiction construing this endorsement in the context of a viral pandemic. Exclusions "must be construed in favor of the insured and such language must be clear and unmistakable." *USF&G v. Martin*, 998 So.2d 956, 963 (Miss. 2008).

The Virus or Bacteria Exclusion does not clearly and unambiguously exclude business interruption coverage. The Exclusion can be read to apply simply to the contamination of the insured premises, in other words, for the "direct physical loss" to the property. The Exclusion does not clearly apply where the claim arises out of the "loss of" language of the business interruption coverage. Plaintiff's property lost its usability due to the imposition of civil orders which suspended operations and for which there is coverage. *Hartford* cannot show at this stage that no reasonable insured would read the Virus and Bacteria Exclusion as advising that otherwise available coverage for the suspension of operations would be excluded. The Virus and Bacteria Exclusion may also be fairly read to only apply in cases of contamination (physical loss) as it explicitly "supersedes any exclusion relating to 'pollutants.'" (Doc 10-1, p. 149 of 171).

---

[5] In denying Plaintiff's claim, Defendant also relied on an exclusion for "delay, loss of use or loss of market" and for "pollutants" (*see* Denial Letter, Exhibit 1), but it does not do so in its Motion to Dismiss.

## VI.      CONCLUSION

For all the foregoing reasons, it is respectfully submitted that Defendant's Motion to Dismiss should be denied it its entirety.

Respectfully submitted,

/s/ *David McMullan, Jr.*
David McMullan, Jr. (MSB #8494)
John "Don" Barrett (MSB #2063)
BARRETT LAW GROUP, P.A.
404 Court Square
Lexington, Mississippi 39095
Telephone: (662) 834-2488
Fax: (662) 834-2628
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Richard Taylor
Attorney at Law
455 St. Louis Street, Suite 2100
Mobile, Alabama 36602
richardtaylor@taylormartino.com

***Attorneys for Plaintiffs and the Proposed Classes***

## <u>CERTIFICATE OF SERVICE</u>

I have on this the 23rd day of July 2020, electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *David McMullan, Jr.*
David McMullan, Jr.