**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**


**REAL HOSPITALITY, LLC d/b/a**
**ED'S BURGER JOINT**                                                    **PLAINTIFF**

**V.**                              **CIVIL ACTION NO. 2:20-cv-00087-KS-MTP**

**TRAVELERS CASUALTY INSURANCE**
**COMPANY OF AMERICA**                                        **DEFENDANT**


## MEMORANDUM OPINION AND ORDER

This cause came before the Court on the Motion to Dismiss the Complaint [9] filed by Defendant Travelers Casualty Insurance Company of America ("Travelers"). Plaintiff Real Hospitality, LLC has responded [16], and Travelers replied [18]. Having reviewed the parties' submissions, the Plaintiff's Class Action Complaint [1], the insurance policy, and the relevant legal authorities, and otherwise being duly advised in the premises, the Court finds, for the reasons stated below, that the motion will be granted and the Complaint dismissed.

## I. BACKGROUND

Because this comes before the Court on a Motion to Dismiss, we look to the allegations of the Complaint. Plaintiff alleges as follows:

### A. Allegations Regarding the Pandemic and Executive Orders

On March 11, 2020, the World Health Organization Director General Tedros Adhanom Ghebreysus declared the COVID-19 outbreak a worldwide pandemic. [1] at ¶ 1. Thereafter, the President of the United States, the Centers for Disease Control and Prevention, and a national Coronavirus Task Force issued guidance to help stop the spread of COVID-19. [1] at ¶ 2. Following such guidance, many local and state government administrations across the nation recognized the need to take measures to protect the health and safety of their residents. [1] at ¶ 3.

Because recommendations have proven ineffective to minimize the spread of COVID-19, containment efforts have resulted in civil authorities issuing orders closing non-essential business establishments, including restaurants, bars, hotels, theaters, personal care salons, gyms, and schools and mandating social distancing among the population. [1] at ¶ 21.

Plaintiff is a Mississippi corporation doing business in Hattiesburg, Mississippi. [1] at ¶ 13. On March 18, 2020, Hattiesburg Mayor Toby Barker issued an executive order restricting operating times for all restaurants within Hattiesburg, and on March 21, 2020, he issued another executive order closing all dine-in services at Hattiesburg restaurants. [1] at ¶ 35; [10-2] at pp. 2, 3.[1] On March 24, 2020, Governor Tate Reeves issued an executive order, likewise restricted restaurant operations by suspending all dine-in services. [1] at ¶ 36; [10-2] at p. 4.[2] Other similar orders have been issued that close or restrict all non-essential business operations or prohibit public access to the property of non-essential businesses. [1] at ¶ 37. As a direct result of the governmental orders and the COVID-19 pandemic, Plaintiff has been forced to close its premises, suspend business operations, and furlough employees. [1] at ¶ 39.

### B. Allegations Regarding the Insurance Policy and Alleged Breach

Travelers issued to Plaintiff an "all risk" commercial property insurance policy, which covers loss or damage to the covered premises resulting from all risks other than those expressly excluded (the "Policy"). [1] at ¶ 23; [10-1]. Plaintiff's Policy contains Common Policy Declarations, which provide that Plaintiff is the named insured, and the business is a family style restaurant located at 3800 Hardy St. in Hattiesburg, Mississippi. [10-1] at p. 7. The Common

---

[1] Although the Executive Orders were not attached to the Complaint, but rather the motion to dismiss, the Court may consider documents attached to the motion that are referred to in the Complaint and are central to the plaintiff's claims. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). This applies to both the Executive Orders and the insurance policy at issue here, which was also attached to the motion to dismiss. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)("[D]ocuments that a defendant attaches to its motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim.").

[2] On May 8, 2020, when Plaintiff filed its Complaint, said closings were still in effect. [1] at ¶ 36.

Policy Declarations also state that the coverage parts that form part of the policy is a Businessowners Coverage Part. [10-1] at p. 7. The Policy also contains a Businessowners Coverage Part Declarations page, which indicates that the policy contains Commercial General Liability Coverage and Businessowners Property Coverage. [10-1] at p. 8. Under the Businessowners Property Coverage section, the Declarations page indicates a deductible amount per occurrence for both "Businessowners Property Coverage" and "Building Glass." [10-1] at p. 8. Also under the Businessowners Property Coverage section, there is a Business Income/Extra Expense Limit, as well as a Period of Restoration-Time Period. *Id*. Finally, the Businessowners Property Coverage indicates there is additional coverage for Fine Arts. *Id*.

As for the body of the Policy itself, Travelers uses standard, uniform insurance policies that contain a standard policy form titled "Businessowners Property Coverage Special Form." [1] at ¶¶ 24, 25; [10-1] at p. 21. This Special Form contains the following provisions, some of which Plaintiff includes in the Complaint, others of which the Court finds essential to the analysis of Plaintiff's ability to state a claim:

> **A. COVERAGE**
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.
> **1. Covered Property**
> Covered Property, as used in this Coverage Form, means the type of property described in this Paragraph **A.1.**, and limited in Paragraph **A.2.**, Property Not Covered . . . .
> **a. Building**, meaning the building or structure described in the Declarations, including:
>
>       ***
>
> **b. Business Personal Property** located in or on the buildings described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises, including:

\*\*\*

**3. Business Income and Extra Expense**

Business Income and Extra Expense is provided at the premises described in the Declarations when the Declarations show that you have coverage for Business Income and Extra Expense.

**a. Business Income**

  **(1)** Business Income means:

    (a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred []; and

    (b) Continuing normal operating expenses incurred, including payroll

  **(2)** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

    \*\*\*

**b. Extra Expense**

  **(1)** Extra expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

    \*\*\*

**c. Extended Business Income**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under Paragraph **a.** Business Income above, we will also pay for the actual loss of Business Income you sustain during the period that:

  **(1)** Begins on the date property is actually repaired, rebuilt, or replaced and "operations" are resumed; and

4

(**2**) Ends on the earlier of:
    (**a**) The date you could restore your "operations" with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage occurred; or
    (**b**) Sixty consecutive days after the date determined in Paragraph (1) above.

        ***

[10-1] at pp. 22-24.[3]  Under the definitions section for "Period of Restoration," the Policy states, in relevant part:

**19**. "Period of Restoration"
  **a.** Means the period of time that:
    (**1**) Begins:
      (**i**)  For Business Income coverage:
        (**a**) With the date of direct physical loss or damage . . . .
      (**ii**)  For Extra Expense coverage with the date of direct physical loss or damage;
      Caused by or resulting from any Covered Cause of Loss at the described premises; and
    (**2**) Ends on the earlier of:
      (**i**)  The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
      (**ii**) The date when business is resumed at a new permanent location.

[10-1] at p. 58. Further, the Policy contains an endorsement titled "Exclusion of Loss Due to Virus or Bacteria," which reads, in relevant part, "We will not pay for loss or damage caused by

---

[3] Plaintiff also includes the provision for "Additional Coverage Civil Authority." [1] at ¶ 29. However, all allegations and argument regarding such provision are moot, as Plaintiff advises the Court in its response to the instant motion that Plaintiff is now seeking coverage under the Business Income provision only. [16] at p. 14.

or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness, or disease." [10-1] at p. 149.

Lastly, Plaintiff alleges that it has faithfully paid the premiums, which Travelers has accepted, and thus, Travelers is obligated to honor its contractual duty to provide coverage for the business losses and extra expenses and other expenses suffered. Travelers denied Plaintiff's claims, contending that Plaintiff's business interruption losses due to the COVID-19 pandemic are not covered under its form policy. [1] at ¶ 40.[4]  Plaintiff asserted two causes of action—one for declaratory judgment and one for breach of contract.

**C. The Motion to Dismiss**

Travelers now moves for dismissal under Federal Rule of Procedure 12(b)(6), arguing that Plaintiff has failed to state a claim for coverage under the Business Income/Extra Expense provision, namely because Plaintiff has not alleged facts showing a physical loss of property or any physical damage to property that would trigger the Business Income/Extra Expense coverage. In addition, Travelers argues that even if such facts required for coverage were pled, Plaintiff's claim would be expressly excluded by the "virus exclusion."

In response, Plaintiff firsts asks that the Court certify to the Mississippi Supreme Court the question of what the Business Income Coverage provision means. Plaintiff also argues that the Business Income coverage provision applies because it has suffered a loss of use of the business premises. In addition, Plaintiff argues that the policy exclusion for viruses does not clearly and unambiguously exclude coverage.

---

[4] Plaintiff brings the Complaint as a class action and seeks to certify a nationwide class of policyholders who have suffered losses due to the measures put in place to stop the spread of COVID-19; however, it cannot do so if Plaintiff is not part of the class because its individual facts fail to state a claim. *Cf. O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (explaining that if none of the named plaintiffs purporting to represent a class can establish a requisite case or controversy, then none may seek relief on behalf of himself or any other member of the class).

## II. DISCUSSION

### A. Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The Court must 'accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.'" *Id.* "[T]he Court will not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* "Likewise, 'a formulaic recitation of the elements of a cause of action will not do.'" *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010).

### B. Analysis

The Court will apply Mississippi law, as the Court, sitting in diversity jurisdiction, applies the choice of law rules of the forum state. *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 906 F.2d 158, 167 (5th Cir. 1990).[5] In cases arising from insurance contracts, Mississippi follows RESTATEMENT (SECOND) CONFLICT OF LAWS § 193, under which "the rights created by [an insurance] contract 'are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy." *Hartford Underwriters Ins. Co. v. Found. Health Svcs., Inc.*, 524 F.3d 588, 594 (5th Cir. 2008). Here, the insured is located in Mississippi, and the insured premises, i.e., the restaurant, is located in Mississippi. [1] at ¶¶ 31-32; [10-1] at p. 1.

---

[5] Both parties agree that Mississippi law governs this insurance coverage dispute.

Under Mississippi law, courts "follow[] the plain meaning and common sense approach when interpreting insurance clauses." *Wooten v. Miss. Farm Bureau Ins. Co*., 924 So. 2d 519, 522 (Miss. 2006). In other words, "when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Paul Revere Life Ins. Co. v. Prince*, 375 So. 2d 417, 418 (Miss. 1979). "[A]mbiguities do not exist simply because two parties disagree over the interpretation of a policy." *United States Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008)(citing *HeartSouth, PLLC v. Boyd*, 865 So.2d 1095, 1105 (Miss. 2003)).

### 1. Business Income/Extra Expense Coverage

Here, Plaintiff is seeking a declaratory judgment that Business Income coverage applies under the facts alleged in the Complaint and that Travelers breached the contract in failing to pay the claim. Travelers moves to dismiss on the grounds that the Complaint does not allege a physical loss of property or any physical damage to property as is required for coverage under the Business Income/Extra Expense coverage provision. In its response, Plaintiff contends that the policy language does not require physical alteration to property and that loss of the usability of the business premises qualifies it for coverage.[6]

"The interpretation of an insurance policy is a question of law." *Hankins v. Maryland Cas. Co*., 101 So. 3d 645, 652 (Miss. 2012).  Under the Business Income and Extra Expense provision, the policy reads, in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

---

[6] As to Plaintiff's first argument presented in its response—that the question of coverage should be certified to the Mississippi Supreme Court—under the Mississippi Rules of Appellate Procedure, that is not an option for a district court. *See* Miss. R. App. P. 20(a) (authorizing certification only by the Supreme Court of the United States or by a United States Court of Appeals).

[10-1] at pp. 23-24. Based on this language, it is clear that in order to qualify for coverage, there must be a suspension of Plaintiff's operations, which no one disputes, that was caused by "direct physical loss of or damage to property at the described premises."

Because the policy does not define the phrases "direct physical loss of" and "damage to," Plaintiff focuses on the disjunctive "or" that denotes a choice between alternatives. [16] at p. 7. Plaintiff contends the phrases must be considered separately as a trigger of coverage. In relying on the disjunctive phrasing, Plaintiff focuses on the first alternative—"direct physical loss of"— arguing that it does not require a tangible damage or alteration to property.[7] In addressing this argument, the Court first notes that Travelers never argued that both phases require some sort of physical *damage* to the property, so the fact there is a distinction between the two phrases is irrelevant and does not get Plaintiff where it needs to go.

Giving separate effect to "loss" and "damage" in the phrase, "direct physical loss of or damage," only highlights the distinction between "the permanent dispossession of" and "damage." *Total Intermodal Svcs., Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 17-cv-4908, 2018 WL 3829767, at *2 (C.D. Cal. July 11, 2018).[8] Even if the Policy covers "permanent dispossession" in addition to physical alteration, which the Court concludes that it does, that does not benefit Plaintiff here. Despite the disjunctive phrasing, with the modifying adjectives, the phrases are "direct physical loss of property" or "damage to property." Either way, "property" is involved. The property is either physically lost, *i.e.*, the insured suffers a permanent dispossession

---

[7] Plaintiff's reliance on cases that deal with the isolated word "loss" or the use of the word within a grouping such as "loss, damage, or destruction," is misplaced. The grammar used in this particular policy is clear that it requires a "direct physical loss of property."

[8] In *Total Intermodal Services* Travelers denied a claim for lost cargo, arguing that because there had been no physical loss or damage to the cargo, coverage did not apply. 2018 WL 3829767 at *1. However, the court denied summary judgment, ruling that the phrase "direct physical loss of property" does not require damage but includes the permanent dispossession of something. *Id.* at *3.

of the property, or it is damaged. After all, it is a commercial "property" policy.[9] As Travelers

readily acknowledges, a theft would be a direct physical loss of property, and while a fire typical

involves direct physical damage, it can also cause a total loss of property. The Court agrees with

this common-sense approach to the wording.

"A policy must be considered as a whole, with all relevant clauses together." *United States*

*Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008)(citing *J & W Foods Corp.*

*v. State Farm Mut. Auto. Ins. Co*., 723 So.2d 550, 552 (Miss.1998)). When all of the provisions

are read together it makes logical sense that the property that is insured, *i.e.*, the building and/or

personal property in or on the building, must first be lost or damaged before Business Income

coverage kicks in. Borrowing from Traveler's example, there is at least one scenario where there

could be both. For instance, in a restaurant with ten tables, there could be a fire, which completely

burns up five of the tables—thus, there is a "direct physical loss of property." The fire also could

melt the tabletops or cause smoke damage to the remaining five tables—thus, there is "damage to

property." Because the Business Income is paid only during the "period of restoration," we must

also look to that definition.

The Policy states that the Period of Restoration begins: "With the date of direct physical

loss or damage" and ends "[t]he date when the property at the described premises should be

repaired, rebuilt or replaced with reasonable speed and similar quality; or (ii) The date when

business is resumed at a new permanent location." If there is no requirement that physical loss of

---

[9] One does not buy simply "business interruption insurance." Policyholders are not insuring against "all risks" to their income—they are insuring against "all risks" to their property—that is, the building and its contents. Here, as Plaintiff has pled, the Policy purchased is a "commercial property" policy. [1] at ¶ 23. Thus, just as the Declarations state, the Policy carries property coverage as well as liability coverage. [10-1] at p. 8. Based on the definition of Covered Property, should a covered peril befall the building or personal property located in or on the building, the insured can make a claim. As a subset of this coverage, should such a loss of or damage to the building or any personal property cause a disruption to a policyholder's business such that it suspends operations, then there is coverage for that income loss during the time of repair, rebuilding or replacement in order to get, for lack of a better phrase, "back to normal." Travelers could have made the Business Income coverage even clearer by using the phrase "direct physical loss of or damage to Covered Property," as it did in the policy at issue in *Total Intermodal Svcs., Inc. v. Travelers Prop. Cas. Co. of Am*., No. 17-cv-4908, 2018 WL 3829767, at *2 (C.D. Cal. July 11, 2018), but it is still "loss of or damage to property at the described premises" nonetheless.

or physical damage to the property be involved, the definition of the time period for paying the claim makes no sense. In addition, the policy covers Extended Business Income, and while not specifically at issue here, this provision likewise makes clear that there must be some sort of physical loss or physical damage. That provision states that if the suspension of operations produces a loss payable under the Business Income provision, Travelers will also pay for the loss of business income that begins on the date property is actually "repaired, rebuilt, or replaced *and* operations are resumed" and ends when operations reach a certain level. None of these provisions indicate that the period of payment will end simply when operations resume, as Plaintiff contends. As such, the Court rejects Plaintiff's interpretation of the "Period of Restoration," which is that when the Executive Orders are lifted, this would constitute a "repair" because Plaintiff's property would be restored to a "sound state." [16] at p. 14.[10] This contorted interpretation is inconsistent with the plain and common sense meaning of the word "repair."

Based on the foregoing, reading the Policy as a whole, the Court finds that Plaintiff's Complaint fails to state a claim because it does not allege that any insured property was damaged or that Plaintiff was permanently dispossessed of any insured property. Consequently, Plaintiff's contention that "loss of property" reasonably includes loss of usability is not sustainable.[11]

Plaintiff is not the first policyholder to argue in court that executive/government orders issued during the COVID-19 pandemic that have affected their operations trigger insurance under Business Income/Extra Expense provisions identical to the one at issue in the Policy here. Most

---

[10] Plaintiff relies on a definition from Merriam Webster, which defines "repair" as "to restore to a sound or healthy state." [16] at p. 14.

[11] The cases from other jurisdictions cited by Plaintiff for the proposition that loss of use is sufficient to trigger coverage are all distinguishable. [16] at pp. 10-11. In each of those cases there was a pervasive, physical impact on the insured property for which each court concluded was tantamount to physical loss or damage. Conditions such as the presence of gasoline or ammonia, asbestos contamination, odor from a methamphetamine lab, threat of rock falls, and toxic gases from Chinese drywall were present in each of those cases. Such cases involved circumstances "where the building in question ha[d] been rendered unusable by physical forces." *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010). Here, Plaintiff has not pled the existence of any such condition that would render its premises uninhabitable.

courts have rejected these claims and granted motions to dismiss based on the finding that the businesses' complete or partial closures due to government orders issued to slow the spread of COVID-19 do not constitute "direct physical loss of or damage to property." [12] *See e.g.*, *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, No. CV 20-3619 PSG (EX), 2020 WL 6156584 (C.D. Cal. Oct. 19, 2020) (J. Gutierrez); *Louis G. Orsatti, DDS, P.C. v. Allstate Ins. Co*., No. 5:20-cv-00840, 2020 WL 5948269 (W.D. Tex. Oct. 7, 2020); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am*., No. 1:20-cv-2939, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020); *Mark's Engine Co. No. 28 Restaurant, LLC v. The Travelers Indemnity Co. of Conn*., No. 2:20-cv-4423, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) (J. Birotte); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc*., No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *1 (S.D. Cal. Sept. 11, 2020); *10E, LLC v. Travelers Indemnity Co. of Conn*., No. 2:20-cv-4418, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) (J. Wilson);  *Malaube, LLC v. Greenwich Ins. Co*., No. 20-22615-CIV, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020).

As one district court in California recently explained,[13]

> An insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage. . . . Plaintiff's [First Amended Complaint] attempts to make precisely this substitution of temporary impaired use or diminished value for physical loss or damage in seeking Business Income and Extra Expense coverage. Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or

---

[12] The case of *Studio 417, Inc. v. Cincinnati Ins. Co.,* No. 20-CV-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), relied on by Plaintiff, is distinguishable. [20-1]. In that case, the district court denied the insurer's motion to dismiss, at least in part, on the allegations "that COVID-19 'is a physical substance,' that it 'live[s] on' and is 'active on inert physical surfaces," and is also 'emitted into the air." COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it 'unsafe and unusable, resulting in direct physical loss to the premises and property." *Studio 417*, 2020 WL 4692385, at *4. The plaintiff in that case also alleged that "it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus." Id. at *2.  As such, the court found that the complaint "plausibly alleg[ed] a 'direct physical loss' based on 'the plain and ordinary meaning of the phrase.'" *Id*. In contrast, here, Plaintiff never specifically alleges that the virus is/was present on the restaurant premises. Rather, the Complaint states, "As a direct result of the governmental orders and the COVID-19 pandemic, Plaintiff has been forced to close its premises, suspend business operations, and furlough employees." [1] at ¶ 39.

[13] California law on contract interpretation is similar to, if not the same as, Mississippi law, *i.e.*, policy provisions are interpreted in their ordinary and popular sense. *See Waller v. Truck Ins. Exch., Inc.,* 900 P.2d 619, 627 (Cal. 1995), *as modified on denial of reh'g* (Oct. 26, 1995).

value of its property – not that the restrictions caused direct physical loss or damage.

*10E, LLC*, 2020 WL 5359653, at *4–5 (internal citations omitted). Here, Plaintiff makes similar arguments for coverage under identical policy language. In its response to Travelers' motion, Plaintiff tellingly states, not that damage was done to its property, but rather "Plaintiff will never be able to recoup the damage done *to its business operations* by the Coronavirus."

As noted in footnote 10 above, this is a commercial property policy, not a stand-alone business interruption policy—Plaintiff's *operations* are not what is insured—the building and the personal property in or on the building are. Accordingly, Plaintiff is incorrect when it states, "Plaintiff's property lost its usability due to the imposition of civil orders which suspended operations and for which there is coverage." [16] at p. 15. Again, Plaintiff has failed to plausibly allege any entitlement to coverage under the Business Income or Extra Expense provisions in its Policy with Travelers.

### 2. Virus Exclusion

Although the Court finds that Plaintiff fails to plausibly allege that it suffered a "direct physical loss of or damage to" its property, the Court further finds that even if Plaintiff was able to show it suffered such loss or damage, coverage would be precluded under the virus exemption to the Policy.

The virus exclusion clearly and unequivocally exempts "loss or damage caused by or resulting from any virus." [10-1] at p. 149. Plaintiff's Complaint clearly demonstrates that all alleged loss or damage was caused by or resulted from COVID-19. Plaintiff alleges that "[c]oronaviruses are a type of virus that often cause respiratory diseases in humans" and that that COVID-19 is short for Coronavirus Disease-2019. [1] at ¶¶ 16, 17. Plaintiff also alleges that "[t]he civil authority orders expressly state that the closing of non-essential businesses are necessary measures to protect the health and safety of all residents by stopping the spread of the

virus through human to human and surface to human contact." [1] at ¶ 38.  Plaintiff further alleges that "[a]s a direct result of . . . the COVID-19 pandemic, Plaintiff has been forced to close its premises, suspend business operations, and furlough employees." [1] at ¶ 39. Therefore, the virus exemption applies here and precludes all coverage.

## III. CONCLUSION

Because the allegations of the Complaint do not state a claim for coverage under the Policy, Plaintiff's claims for declaratory judgment and breach of contract must be dismissed. Accordingly, it is hereby ORDERED that the Motion to Dismiss the Complaint [9] filed by Defendant Travelers Casualty Insurance Company of America is GRANTED, and the Complaint is dismissed in its entirety.

SO ORDERED AND ADJUDGED this 4th day of November 2020.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT